CUAUHTEMOC ORTEGA (Bar No. 257443)
Federal Public Defender
MICHAEL L. BROWN II (Bar No. 338623)
(E-Mail: Michael_l_Brown@fd.org)
Deputy Federal Public Defender
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-5327
Facsimile: (213) 894-0081

Attorneys for Defendant
EFRAIN CHAVEZ

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　　　v.<br><br>EFRAIN CHAVEZ<br><br>　　　　　Defendant. | Case No. CR 19-00396-DSF<br><br>**DEFENDANT'S SENTENCING MEMORANDUM**<br><br>Hearing Date: March 28, 2022<br>Hearing Time: 10 a.m.<br>Location:　Courtroom of the Hon.<br>　　　　　　Dale S. Fischer |

Efrain Chavez, by and through his counsel of record, Deputy Federal Public Defender Michael L. Brown II, respectfully requests that the Court sentence Mr. Chavez to a 120-month sentence of imprisonment and recommendation for RDAP treatment through the Bureau of Prisons.

　　　　　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　CUAUHTEMOC ORTEGA
　　　　　　　　　　　　　　　Interim Federal Public Defender


DATED: March 14, 2022　　　By　/s/ *Michael L Brown II*
　　　　　　　　　　　　　　　MICHAEL L. BROWN II
　　　　　　　　　　　　　　　Deputy Federal Public Defender
　　　　　　　　　　　　　　　Attorney for EFRAIN CHAVEZ

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Mr. Chavez pled guilty to a violation of 21 U.S.C. 841(a)(1), (b)(1)(B)(viii) for his participation in possessing 5.125 kilograms of methamphetamine. Simply put, Mr. Chavez like so many others that come before this Court is an addict. The path that led to his addiction is not atypical or hard to understand. Mr. Chavez has hit rock bottom. This is his first federal offense, his first time dealing with the federal criminal justice system, and his first time grappling with accountability and examining his past. Mr. Chavez seeks accountability. He is striving to do the work to figure out what his triggers are so he may in the future avoid drug use.

Mr. Chavez's total offense level is 38 and his criminal history category is VI, but as he has completed Safety Valve and due to the First Step Act, there is no mandatory minimum in this case. *See United States v. Lopez* (9th Cir. No. 19-50305 2021 19-cr-261-L-1). This was not noted by either the USPO or the government in filings.

The USPO recommends a downward variance to 180 months and the government wishes to impose a sentence of 292 months. A sentence of *twice as long as* Mr. Chavez has ever served in this case of ten years is harsh enough to achieve the goals of sentencing under the 3553(a) factors.

### II. THE APPROPRIATE SENTENCE

In determining the appropriate sentence for Mr. Chavez, the Court must consider all of the statutory sentencing factors set forth at 18 U.S.C. § 3553(a). *See United States v. Booker*, 543 U.S. 220 (2005). The Court may not employ a presumption that the advisory guideline range is the reasonable or appropriate sentence. *United States v. Gall*, 552 U.S. 38, 49 (2007); *see also Peugh v. United States*, 569 U.S. 530, 530 (2013) ("The court may not presume that the Guidelines range is reasonable")(internal quotations and citations omitted). For that reason, "extraordinary circumstances are not needed to justify a sentence outside the guidelines range."

*United States v. Ruff*, 535 F.3d 999, 1002 (9th Cir. 2008). The guidelines are instead simply one of many factors for the Court to consider when imposing a sentence. *Gall*, 552 U.S. at 59. The task for the Court is to impose a reasonable sentence, based on the individual defendant and the facts and circumstances of the case at hand, that is "sufficient, but not greater than necessary," to achieve the statutory purposes of sentencing. 18 U.S.C. § 3553(a); *United States v. Pepper*, 562 U.S. 476, 491 (2011).

**A.     The Nature and Circumstances of the Offense & History and Characteristics of Mr. Chavez Support Imposing the Recommended Variance from the Guidelines.**

Mr. Chavez's life presents a good deal of but for situations for which he is now facing being introduced to the federal system.

But for his introduction to drugs to him a young age, who knows where he would be today. PSR, ¶ 64. Many individuals have a troubled childhood and do not turn to drugs or gangs but many do and Mr. Chavez is one of those individuals. At age 37, he believes that with the assistance of RDAP he can be the type of offender that "ages" out of criminal behavior when this is all said and done and end his participation with the criminal justice system for good. With the proposed sentence he will miss multiple important years in his children's lives and will feel everyday of it. Mr. Chavez knows that he must cure his addiction to end his participation with the criminal justice system. There is no need for an unduly harsh sentence for the purpose of specific or general deterrence. His letters of support make clear he is accepting of responsibility and has enough support going forward to not commit the same mistakes. *See* Ex. A1-2 (Letters of Support).

But for the government's charging decision in this case, Mr. Chavez would be facing state charges like he has in the past. However, in charging the case, Mr. Chavez immediately was facing federal counts. In state, on average it is highly unlikely that he would be facing anywhere near the exposure that comes along with federal sentencing.

2

Having previously only served less than 5 years in jail, this was the wake up call that Mr. Chavez needed and truly forced him to his rock bottom. Mr. Chavez within months accepted responsibility for his role in the offense.

Now with acceptance of responsibility behind him, the only question for this Court is what is an appropriate sentence.

**B.  A Variance from the Guidelines is warranted by the fact that Mr. Chavez's Criminal History is Overstated.**

As noted, Mr. Chavez has multiple prior state offenses for which the longest sentence he has ever received is five years. PSR, at ¶ 41. While the undersigned acknowledges Mr. Chavez's history of drug related addiction-based offenses yields a Criminal History Category of VI, submits it is vastly overstated because his offenses were largely to support his drug habit for which he spent a great deal of money upon at its peak. Even though he is eligible for Career Offender Status, as noted by the USPO, there are multiple reasons to vary downward here. The chief reason being that sadly Mr. Chavez despite his numerous contacts with the criminal justice system has never been engaged with the appropriate treatment services.

**C.  A Variance is also Justified Based on the Unwarranted Disparity between Pure and Mixed Methamphetamine under the Sentencing Guidelines.**

The base offense level of 38 calculated by the PSR is driven by Mr. Chavez's possession of over 4.5 KG of "actual" methamphetamine or "ice."  PSR, ¶¶ 24; U.S.S.G. § 2D1.1(c)(1); But the guidelines would have provided for a base offense level of 34 if the substance possessed was simply "methamphetamine." U.S.S.G. § 2D1.1(c)(3).

When the Sentencing Commission promulgated the current methamphetamine guidelines, it reasoned, in part, that if the drugs were purer, it likely meant the

3

defendant played a more important role in the drug operation.  As the Commission stated: "Since controlled substances are often diluted and combined with other substances as they pass down the chain of distribution, the fact that a defendant is in possession of unusually pure narcotics may indicate a prominent role in the criminal enterprise and proximity to the source of the drugs."  *United States v. Hayes*, 948 F. Supp. 2d 1009, 1025 (N.D. Iowa 2013) (quoting U.S.S.G. § 2D1.1, cmt. n.26(c)) (internal quotation marks omitted).

The Commission's reasoning may have made sense at the time, but given the situation on the ground today, the Commission's "assumption regarding the connection between methamphetamine purity and criminal role is divorced from reality."  *United States v. Ibarra-Sandoval*, 265 F. Supp. 3d 1249, 1255-56 (D.N.M. 2017) (imposing sentence that "would have fallen within the Guidelines range had [defendant] been sentenced under the methamphetamine-mixture calculation").  As one district court opinion explained, "[d]ue to increases in the average purity of methamphetamine sold today, purity is no longer an accurate indicator of a defendant's culpability or role in a drug enterprise and the presumptive purity assigned to untested drugs does not reflect market realities."  *United States v. Hartle*, No. 4:16-cv-233-BLW, 2017 WL 2608221, at *1 (D. Idaho June 15, 2017).  In light of the fact that "most methamphetamine seized at all distribution levels is remarkably pure . . . higher purity is not a good indicator of a defendant's place in the chain of distribution."  *Id.* at *3; *see also id.* at *4 ("I will therefore routinely consider granting a variance in cases where drug purity testing has been completed, so as to ameliorate the unwarranted disparity between cases involving tested and untested substances, and to impose a sentence that reflects the seriousness of the offense.").

Because drug purity is no longer an accurate indicator of a defendant's role or lack of role in a criminal enterprise, the current methamphetamine guidelines minimize the possibility of individualized sentencing.  As another district court opinion explained, "because of the generally very high purity of methamphetamine available

4

today at all levels of the distribution chain, virtually all defendants today face enhanced punishment for a factor present in virtually all methamphetamine cases, not enhanced punishment based on individualized determinations, making the Guidelines purity enhancement excessive." *United States v. Nawanna*, 321 F. Supp. 3d 943, 954, 955-58 (N.D. Iowa 2018) (varying downwards from an advisory guidelines sentencing range of 360 months to 132 months' incarceration in part by using the methamphetamine mixture guideline to determine an alternative base offense level).[1]

Indeed, Judge Birotte recently varied downward during a methamphetamine trafficking sentencing, reasoning: "I've had some questions about that [disparity], particularly because where we live, here in Los Angeles, I think I've had either a deputy chief or chief of narcotics indicate that the vast majority of drugs, particularly methamphetamine, that comes through this region is almost all of a high purity." *See* Ex. 9, Excerpt from Sentencing Transcript at 20, *United States v. Enrique Alejandro Garcia*, Case No. CR 17-00338-AB (C.D. Cal. Feb. 7, 2020)); *see also id.* at 22-27 (varying downwards four levels from a range of 235-293 months to 151 months, crediting the defense's "sentencing based on . . . purity of methamphetamine argument"; "[i]t just strikes me that the -- there is a bit of a disparity in the sentencing when the guidelines have raised the -- there is an increase in the Guideline range because of the purity of the methamphetamine.").

Further, even setting aside the purity-driven disparity, many courts have recognized the arbitrary nature of the elevated base offense levels in drug cases. *See, e.g.*, *United States v. Diaz*, No. 11-cr-00821-2 (JG), 2013 WL 322243, at *1 (E.D.N.Y.

---

[1] Additionally, the steeper penalties for purer methamphetamine have also "led to substantial and unwarranted disparities in sentencing based solely on whether methamphetamine is lab tested." *United States v. Hendricks*, 307 F. Supp. 3d 1104, 1107 (D. Idaho 2018). Since most methamphetamine seized today is of high purity, cases in which a purity analysis was performed, such as this one, tend to carry dramatically elevated base offense levels. And yet, "[t]he reasons why testing is or is not performed in any case are completely arbitrary." *Id.*

Jan. 28, 2013) ("[T]he Guidelines ranges for drug trafficking offenses are not based on empirical data, Commission expertise, or the actual culpability of defendants . . . . Instead, they are driven by drug type and quantity, which are poor proxies for culpability.").

Here, Mr. Chavez's base offense level is <u>four levels higher</u> than the offense level for the same quantity of a methamphetamine mixture (level 34). This four-level increase drives up his guidelines range by <u>104 months</u> at the low-end of the applicable guideline ranges (with a base offense level of 34 and no other alterations to the PSR's calculations, Mr. Chavez's advisory guidelines range would be 188-235 months instead of 292-365 months). For the reasons outlined above, his base offense level of 38 should not be presumed reasonable. When a guideline is not the product of "empirical data and national experience," it is not an abuse of discretion to conclude that it fails to achieve the purposes of Section 3553(a). *Kimbrough*, 552 U.S. at 109-10.

The defense therefore respectfully urges this Court to follow the above courts and the chorus of other recent cases across the country[2] and vary downward four levels alone based on the fact that the methamphetamine guideline's 10:1 ratio is no longer justified.

---

[2] *See also, e.g.*, *United States v. Moreno*, No. 19-cr-002, 2019 WL 3557889, at *4 (W.D. Va. Aug. 5, 2019); *United States v. Johnson*, 379 F. Supp. 3d 1213, 1227-30 (M.D. Ala. 2019) ("[A]s to the purity critique, the court joined other courts in re-calculating the base-offense level by using the methamphetamine-mixture guideline, instead of the actual methamphetamine Guideline. Eradicating the distinction between actual methamphetamine and methamphetamine mixture appropriately corrects for the Guidelines' unfounded penalization of purity."); *United States v. Bean*, 371 F. Supp. 3d 46, 48-57 (D.N.H. 2019); *United States v. Pereda*, No. 18-cr-00228-CMA, 2019 WL 463027, at *1-6 (D. Colo. Feb. 6, 2019); *United States v. Harry*, 313 F. Supp. 3d 969, 973-75 (N.D. Iowa 2018).

### D. The Proposed Sentence would not lead to Sentencing Disparities under 3553(a)

Both the government and USPO argue that a lengthy sentence would be necessary to prevent sentencing disparities but the undersigned can find no evidence of that in this district. Judges in this district routinely downwardly vary in these types of cases involving meth. *See United States v. Winfrey, 16-cr-99 FMO-1* (where guidelines were 360-life, USPO recommended 240 months, and Court imposed mandatory minimum of 120 months); *United States v. Sanchez-Baltazar,* 19-295-JGB (where guidelines were 70-87 months, USPO recommended 57 months and the Court imposed a sentence of 30 months in part due to substance abuse being a part of the record); *United States v. Zuniga,* 21-cr-45 (where guidelines135-168 months, the government recommended 108 months and the Court imposed a sentence of 60 months.

## III. CONCLUSION

The requested sentence of twice as much time as Mr. Chavez has ever served is sufficient but not greater than necessary to achieve the goals of sentencing. The RDAP program as well would give him the first opportunity to engage with treatment which here appears necessary to change his life going forward.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED: March 14, 2022          By  /s/ *Michael L. Brown II*
                                MICHAEL L. BROWN II
                                Deputy Federal Public Defender
                                Attorney for EFRAIN CHAVEZ